ACCEPTED
06-14-00099-CV
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
3/24/2015 8:44:10 AM
DEBBIE AUTREY
CLERK

APPELLANT REQUESTS
ORAL ARGUMENT

NO. 6-14-00099-CV

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS

3/25/2015 8:39:00 AM

DEBBIE AUTREY
Clerk

IN THE
COURT OF APPEALS
SIXTH DISTRICT OF TEXAS
Texarkana, Texas

---

RICHARD PARKER,

Appellant,

VS.

JOANN PARKER NEAL,

Appellee.

---

Appeal from the 276th District Court of Camp County, Texas
Honorable Robert Rolston, Judge Presiding

---

BRIEF OF APPELLANT RICHARD PARKER

---

Submitted by:

TOM S. McCORKLE
Tefteller Law, PLLC
403 West Tyler
Gilmer, Texas 75644
Tel 903-843-5678
Fax 903-680-2310

ATTORNEY FOR APPELLANT

## IDENTITY OF THE PARTIES AND COUNSEL

Richard Parker                                    Appellant


Tom S. McCorkle                          Attorney for Appellant
Tefteller Law, PLLC                      Richard Parker
403 West Tyler
Gilmer, Texas 75644
Tel  903-843-5678
Fax 903-680-2310



JoAnn Parker Neal                                Appellee


Lance W. Hinson                          Attorney for Appellee
311 East 16th Street                     JoAnn Parker Neal
Mount Pleasant, Texas 75455
Tel  903-572-9831
Fax 903-572-6198

# TABLE OF CONTENTS

Page

INDEX OF AUTHORITIES.................................................................. ii

STATEMENT OF THE CASE................................................................ 1

ISSUES PRESENTED......................................................................... 2

FACT STATEMENT.......................................................................... 3

SUMMARY OF THE ARGUMENT....................................................... 4

ARGUMENT AND AUTHORITIES

    ISSUE NO. 1:   The Trial Court erred in granting judgment
    that Testatrix lacked testamentary capacity based on the
    jury's answer to Question 1 because the evidence established
    as a matter of law that Testatrix had testamentary capacity
    at the time the will was executed and that no probative
    evidence was admitted to support the finding of the jury.................... 5

    ISSUE NO. 2:   The Trial Court erred in granting judgment
    upon the jury's answer to Question 3 that Testatrix executed
    the will under undue influence because the evidence was legally
    insufficient to support the jury's finding............................................. 12

    PRAYER....................................................................................... 15

    CERTIFICATE OF SERVICE........................................................... 16

    APPENDIX.................................................................................... 17

# INDEX OF AUTHORITIES

Page

CASES

*Campbell v. Groves,* 774 S.W.2d 717 (Tex.App.
    5 Dist., 1989, writ denied)................................................................ 5, 10

*Croucher v. Croucher,* 660 S.W.2d 55 (Tex. 1983)..................................... 6, 7

*Dow Chemical Company v. Francis,* 46 S.W.3d 237
    (Tex. 2001)...................................................................................... 6

*Horton v. Horton,* 965 S.W.2d 78 (Tex.App., 2 Dist.,
    1998, no hist)................................................................................. 6, 12

*In Re Estate of Arrington,* 366 S.W.3d 463
    (Tex.App. 1st Dist., 2012, no hist.)................................................... 5

*In the Estate of Vacker,* 345 S.W.3d 588, (Tex.App.,
    4 Dist., 2011, no hist)................................................................... 7

*In the Matter of the Estate of Woods,* 542 S.W.2d 845
    (Tex. 1976)...................................................................................... 12

*Long v. Long,* 196 S.W.3d 460, (Tex. App. 5
    Dist. 2006, no hist.)...................................................................... 6

*Miller v. Flyr,* 447 S.W.2d 195 (Tex.Civ.App.
    7 Dist. 1969, writ ref n.r.e.)..................................................... 9, 10, 11

*Rothermel v. Duncan,* 369 S.W.2d 917(Tex. 1963)................................... 12

*Sterner v. Marathon Oil Co.,* 767 S.W.2d 686 (Tex. 1989)......................... 7

## STATEMENT OF THE CASE

This is a suit upon an application for probate of the will of Nobie Florence Parker, the Decedent, (hereafter "Testatrix"or "Nobie") brought by Appellant Richard Parker. (CR 5-6). A contest to this application challenging testamentary capacity and alleging undue influence was filed by Appellee JoAnn Parker Neal. (CR 9-13).

A jury trial was held, and the jury reached a verdict from which the Trial Court rendered a judgment (CR 37-38) that at the time of execution of the will Testatrix lacked testamentary capacity and was unduly influenced to so execute the will. From such judgment Richard Parker brings this appeal. (CR 44-45).

1

## ISSUES PRESENTED

## ISSUE NO. 1

The Trial Court erred in granting judgment that Testatrix lacked testamentary capacity based on the jury's answer to Question 1 because the evidence established as a matter of law that Testatrix had testamentary capacity at the time the will was executed and that no probative evidence was admitted to support the finding of the jury.

## ISSUE NO. 2

The Trial Court erred in granting judgment upon the jury's answer to Question 3 that Testatrix executed the will under undue influence because the evidence was legally insufficient to support the jury's finding.

## FACT STATEMENT

Nobie Florence Parker, the Testatrix, then 87 years of age, on February 15, 2006, made an appointment with her attorney James Wallace for the purpose of altering her will that had been prepared by him and executed some two and one-half years prior. (RR Vol 2, pp 15-16). A new will was executed and self-proved. (RR Vol 2, pp 16-21). Testatrix died on August 25, 2011, at the age of 92 years, and her last will was filed in the Camp County Court for probate by Richard Parker on September 7, 2011. (CR 5-6). On September 15, 2011, JoAnn Parker Neal filed her contest to the last will and her application to probate an earlier will executed by Testatrix on February 3, 2003. (CR 9-13). The lawsuit was transferred to the 276th District Court for trial.

## SUMMARY OF THE ARGUMENT

Richard Parker appeals from the judgment on two grounds: First, he challenges the jury's finding of testamentary incapacity of his mother Nobie Parker claiming that her testamentary capacity was established as a matter of law and that no probative evidence was adduced by JoAnn Parker Neal to support the jury finding. Second, Richard appeals from the judgment based on the jury finding of undue influence claiming that finding is a result of no legally sufficient evidence being adduced by JoAnn Parker Neal.

## ISSUE NO. 1

The Trial Court erred in granting judgment that Testatrix lacked testamentary capacity based on the jury's answer to Question 1 because the evidence established as a matter of law that Testatrix had testamentary capacity at the time the will was executed and that no probative evidence was admitted to support the finding of the jury.

## ARGUMENT AND AUTHORITIES

The jury verdict on Question 1 was that Nobie Florence Parker did not have testamentary capacity to execute her will on February 15, 2006. Richard Parker contends that the evidence established, as a matter of law, that Nobie did indeed have testamentary capacity on that day and that there was no probative evidence to support the jury's opposite finding.

Testamentary capacity means possession of sufficient mental ability by a person at the time of execution of the will to understand that he is making a will, the effect of making the will, the general nature and extent of his property, to know his next of kin and the objects of his natural bounty, and to have sufficient memory to assimilate the elements of the business to be transacted, to hold those elements long enough to perceive their obvious relation to each other and to form a reasonable judgment as to them. *Campbell v. Groves,* 774 S.W.2d 717, 718 (Tex.App. 5 Dist., 1989, writ denied); *In Re Estate of Arrington,* 366 S.W.3d 463, 467-468 (Tex.App. 1 Dist., 2012, no hist).

5

A pivotal issue is whether a testator had testamentary capacity on the day the will was executed. Evidence of the testator's state of mind at other times can be used to prove his state of mind on the day of execution provided the evidence demonstrates a condition affecting his testamentary capacity was persistent and likely was present at the time the will was executed. *Long v. Long,* 196 S.W.3d 460, 464-466 (Tex. App.5 Dist. 2006, no hist.). Such evidence adduced must pass two tests: First, was the evidence of the kind that would indicate lack of testamentary capacity? Second, if so, was that evidence probative of the testamentary capacity or lack thereof, on the day the will was executed? *Croucher v. Croucher,* 660 S.W.2d 55, 57 (Tex. 1983). Furthermore, the evidence provided by the will contestants must be of a satisfactory and convincing character, and probate will not be set aside on the basis of evidence that creates only a suspicion of mental incapacity. *Horton v. Horton,* 965 S.W.2d 78, 85 (Tex.App., 2 Dist., 1998, no hist).

**Standard of Review**

Richard Parker, being the proponent of the will, has the burden of proof. He challenges the legal sufficiency of the evidence adduced in support of the jury's finding in Question 1 regarding the lack of testamentary capacity. When a party attacks the legal sufficiency of an adverse finding on a issue which the party has the burden of proof that party must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chemical Company v. Francis,* 46 S.W.3d 237,

241 (Tex. 2001); *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex. 1989). Under a legal sufficiency or *matter of law* standard of review the reviewing court must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Sterner v. Marathon Oil Co.,* 767 S.W.2d at 690. If there is no evidence to support the finding, the reviewing court will then examine the entire record to determine if the contrary proposition is established as a matter of law. *Sterner v. Marathon Oil Co.,* 767 S.W.2d at 690; *In the Estate of Vacker,* 345 S.W.3d 588, 595 (Tex.App., 4 Dist., 2011, no hist). The point of error should be sustained only if the contrary proposition is conclusively established. *Croucher v. Croucher,* 660 S.W.2d at 58.

## Evidence in Support of Finding

The testimony adduced in support of the jury's finding of a lack of testamentary capacity came from Dr. Ted Trimble. (RR Vol 2, pp 50-102). He testified that Nobie Parker suffered from numerous maladies for which he treated her beginning in 2003, to wit: Diabetes; hypertension; mini strokes; blindness in one eye; many heart attacks and failures; and a broken hip. (RR Vol 2, pp 52-56). When asked how diabetes affected Nobie's overall health, he summed up his medical response with "You know, kind of a foggy brain type of thing." (RR Vol 2, pp 56). Dr. Trimble then testified that Nobie's diabetic condition could be described as dementia. (RR Vol 2, pp 57). The doctor then was asked did Nobie have heart problems, and he testified further about her multiple heart attacks and coronary artery disease. (RR Vol 2, pp 57). After describing coronary heart

7

disease Dr. Trimble said Nobie's case was "pretty severe." (RR Vol 2, pp 58). He was asked could that condition affect Nobie's thinking ability to which he answered that at times it could if it affected blood pressure, and her blood pressure could go extremely high or extremely low. (RR Vol 2, pp 58). Dr. Trimble went on to explain Nobie's renal insufficiency and atrial fibrillation. (RR Vol 2, pp 59-60).

Dr. Trimble further testified that her medical conditions would not get better over time but instead they would and did get worse through 2006 (RR Vol 2, pp 60-61), and gave this description at (RR Vol 2, pp 61):

> *It's kind of like the stair steps. You go down, down, down.*
> *There is no going back up the stairs. You don't get younger,*
> *you get older.*

Upon being asked whether Nobie would have had days when she was clear and focused, Dr. Trimble answered: "Define clear and focused." (RR Vol 2, pp 61). Then the doctor was asked the last question of five that provides the legal definition of testamentary capacity which he answered in the negative and for both 2004 and 2006. (RR Vol 2, pp 61, CR 26 and Appendix). Dr. Trimble was also asked the first four questions which comprises the definition of testamentary capacity by prefacing them with the statement (RR Vol 2, pp 71):

> *Q.    After Mike's death, there was a will that she prepared*
> *in February, 2006. Given your history with her and your*
> *knowledge of her medical issues, would she have had*
> *sufficient mental ability to............*

The first three questions were answered in the negative. When the fourth questions

8

regarding the next of kin was asked, Dr. Trimble responded at (RR Vol 2, pp 71).

        *A.    Pass that one by again.*

## No Probative Evidence To Support Finding

The real question to be determined is: Was there any evidence of probative value adduced in support of the jury finding in Question 1 that Nobie suffered from a lack of testamentary capacity on February 15, 2006? *Miller v. Flyr,* 447 S.W.2d 195, 196 (Tex.Civ.App. 7 Dist. 1969, writ ref n.r.e.). Evidence of Nobie's mental status at times other than the day of execution of the will can be used to show that status on the day of execution if it demonstrates a condition that affects testamentary capacity was persistent and likely present at the time the will was executed. Not only must the evidence be of the kind that would indicate a lack of testamentary capacity, but it must be probative of the lack of testamentary capacity on the day of execution. A review of the evidence in support of the jury's finding will establish that no such evidence exists in the record.

Even the mention of "dementia" (RR Vol 2, pp 57) and "thinking ability" (RR Vol 2, pp 58) were never shown to be of the type condition to indicate a lack of testamentary capacity. The evidence adduced likewise failed to establish their nearness in time to the execution of the will. There was no evidence adduced by the question put to Dr. Trimble about whether Nobie ever had days when she was "clear and focused" as it was never defined nor answered. (RR Vol 2, pp 61). The negative answers of Dr. Trimble to the questions comprising the legal definition of testamentary capacity (RR Vol 2, pp 61, 71)

9

are not probative evidence that can be considered in themselves because they are conclusionary. *Campbell v. Groves,* 774 S.W.2d at 719. Therefore, there is no probative evidence in the record that Nobie lacked testamentary capacity on the day she executed the will. *Miller v. Flyr,* 447 S.W.2d at 196, 203.

## Testamentary Capacity Is Established As A Matter of Law

James Wallace had known of Nobie Parker all his life, and on February 15, 2006, Nobie had been a client of his for approximately 10 years. (RR Vol 2, pp 14). On that day Nobie called his office for an appointment for the purpose of altering the will that he had prepared for her in 2003. (RR Vol 2, pp 15). The consultation occurred later that day with only attorney and client present. (RR Vol 2, pp 16). The will was prepared in writing (RR Vol 2, pp 16) without assistance (RR Vol 2, pp 20) and in the presence of two witnesses (RR Vol 2, pp 17). The will was self-proved. (RR Vol 2, pp 21).

Regarding the issue of whether a person has sufficient mental ability to know he is making a will and understanding the effect of same, there is direct evidence in this record that Nobie called Mr. Wallace for an appointment about altering her will. (RR Vol 2, pp 15). He had represented her in the preparation of her previous will as well as other matters for many years. (RR Vol 2, pp 14). Nobie had instructed Mr. Wallace as to how the prepare the will with her desired results which he followed. (RR Vol 2, pp 20).

Regarding the issue of whether a person has sufficient mental ability to know the general nature and extent of his property, direct evidence appears in the record that Nobie

10

was an astute business woman who knew exactly what she had and what her assets were. (RR 31). In addition, Nobie's specific instructions about the new will and the reason for same included her knowledge of assets. (RR Vol 2, pp 37). Also in this record is Dr. Trimble's testimony that Nobie told him about her property. (RR Vol 2, pp 82).

On the issue of whether a person has the mental ability to know his next of kin and natural objects of his bounty, this record is overwhelmingly conclusive that Nobie knew her next of kin, from her naming them in her will (Appendix at ); to the reasons given Mr. Wallace for changing the 2003 will (RR Vol 2, pp 20), and to Nobie's telling Mr. Wallace about her surviving children, Richard and JoAnn, not getting along (RR Vol 2, pp 37 and about some "animus" about JoAnn regarding changing her will (RR Vol 2, pp 38). The fifth part of the legal definition of testamentary capacity, i.e. sufficient memory is met by a reasonable inference from the evidence in support of the first four elements.

"Where it is shown that the execution of the writing was supervised by a lawyer, much probative force attaches to his opinion that the instrument expressed the wishes of the decedent." *Miller v. Flyr,* 447 S.W.2d at 204. Therefore, the record establishes that Nobie had testamentary capacity at the time of executing the will.

For such error, the judgment that Nobie Parker lacked testamentary capacity on February 15, 2006, should be reversed and rendered that her will executed on that day be admitted to probate.

## ISSUE NO. 2

The Trial Court erred in granting judgment upon the jury's answer to Question 2 that Testator executed the will under undue influence because the evidence adduced in support of the jury's finding is legally insufficient because no such evidence was adduced..

## ARGUMENT AND AUTHORITIES

In order to set aside a will because of undue influence the contestant must prove (1) the existence and exertion of an influence ; (2) the effective operation of such influence so as to subvert or overpower the mind of the testator at the time of the execution of the will; and (3) the execution of a will which the testator would not have executed but for such influence. *Rothermel v. Duncan,* 369 S.W.2d 917, 922 (Tex. 1963). Not every influence is undue and then only if the free agency of the testator is destroyed and a testament is produced that expresses the will of the one exerting the influence rather than the will of the testator. *Horton v. Horton,* 965 S.W.2d 78, 87

The burden of proving undue influence is upon the contestant, and therefore, it is necessary for the contestant to introduce some tangible and satisfactory proof of the each of the elements of undue influence. *Rothermel v. Duncan,* 369 S.W.2d at 922. A will cannot be set aside on proof of facts which at most do no more than show an opportunity to exercise influence. *In the Matter of the Estate of Woods,* 542 S.W.2d 845, 848 (Tex.

12

1976). (Tex.App., 2 Dist., 1998, no hist). In a "no evidence" determination, the court considers only the evidence and inferences which tend to support the jury finding and disregards all evidence and inferences that would lead to contrary findings. *In the Matter of the Estate of Woods,* 542 S.W.2d at 847.

There is nothing in the evidence or the jury finding that determines who exercised any influence over Nobie Parker. The evidence in the record which appears to support the jury finding to Question 3 regarding Richard Parker is here provided from the testimony of JoAnn Parker Neal the contestant: Richard never took Nobie to the doctor, dentist and the grocery store, but he did watch television with her (RR Vol 2, pp 118); Mike, the third child of Nobie considered Richard very bossy (RR Vol 2, pp 122); Richard was not involved with Nobie after Mike died, but involvement picked up when Nobie went into assisted living (RR Vol 2, pp 121); Richard's attitude toward Nobie ..he was bossy...bossy with everybody he saw(RR Vol 2, pp 122); when Richard's father was dying, Richard told doctors that he was in charge (RR Vol 2, pp 123); in early 2000 Richard mowed down the flowers at Nobie's lake house and removed a fence....very bossy (RR Vol 2, pp 124); at David Beard's catfish restaurant Richard would no permit Nobie to take beans out in a to-go box in his car.....very bossy (RR Vol 2, pp 124); Richard cleaned out his father's tool shed, tossed "things" into a burn barrel, and was asked by Nobie not to do so and he said "No, I'm in charge" (RR Vol 2, pp 125); and after Mike died Nobie wanted to clean out his house and Richard put most things in

13

garbage bags upsetting Nobie (RR Vol 2, pp 126).

There is no tangible and satisfactory proof in this record that supports the jury finding on the elements of undue influence. It cannot be reasonably inferred that the alleged acts of Richard were in any fashion exertion of an influence upon Nobie at the time of execution of the will. Likewise, there is no evidence that any such influence did subvert or overpower Nobie's mind the time the will was executed. There is no evidence adduced that supports much less proves that Nobie's will would not have been executed but for such influence. Therefore, the jury finding is not supported by tangible and substantial evidence, and said finding fails for legal insufficiency of the evidence.

For such error, the judgment that Nobie's will was induced by undue influence on February 15, 2006, should be reversed and rendered that her will executed on that day be admitted to probate.

## PRAYER

Appellant Richard Parker respectfully requests that this Court reverse the judgment of the Trial Court and render a judgment that established the Nobie Florence Parker is found to have executed her will on February 15, 2006, with testamentary capacity and free of undue influence and admitting said will to probate, and that Appellant recover his costs.

Respectfully submitted,

/s/  Tom S. McCorkle
TOM S. McCORKLE
State Bar No. 13453000
Tefteller Law, PLLC
403 West Tyler Street
Gilmer, Texas 75644
Tel:  903.843.5678
Fax: 903.680.2310

ATTORNEY FOR APPELLANTS

## CERTIFICATE OF COMPLIANCE

The undersigned attorney for appellants hereby certifies that this document contains 15,433 words.

/s/  Tom S. McCorkle
Tom S. McCorkle

15

## CERTIFICATE OF SERVICE

A true copy of the foregoing Brief of Appellant has been served upon the attorney for Appellee by electronic mail and by placing same in the U. S. Mail, postage prepaid and addressed to Lance W. Hinson, 311 East 16th Street, Mt. Pleasant, Texas 75455, on this 23RD day of March 23, 2015.

/s/ Tom S. McCorkle
Tom S. McCorkle

16

## APPENDIX

1.   JUDGMENT                                    CR 37-38


2.   CHARGE OF THE COURT                         CR 24-30


3.   EXHIBITS

     a.    Last Will of Nobie Florence Parker    RR Vol 6 (Proponent Ex 1)

1

FILED FOR RECORD
at ___ o'clock ___ m

SEP 19 2014

TERESA BOCKMON
District Clerk, Camp County, Texas
By_____ Deputy

NO. CV11-1728

| IN THE ESTATE OF | § | IN THE DISTRICT COURT |
| | § | |
| NOBIE FLORENCE PARKER, | § | 76/276TH JUDICIAL DISTRICT |
| | § | |
| DECEASED | § | CAMP COUNTY TEXAS |

## JUDGMENT

On July 28, 2014, this case was called for trial. Proponent, Richard L. Parker, appeared in person and with his attorney, Tom S. McCorkle, and announced ready for trial. Contestant, JoAnn Parker Neal, appeared in person and with her attorney, Lance W. Hinson, and announced ready for trial.

After a jury was impaneled and sworn, it heard the evidence and argument of counsel. In response to the Charge of the Court, the jury made findings that the Court received, filed, and entered of record.

The Court finds that Contestant had standing to contest the February 15, 2006, Last Will and Testament of Nobie Florence Parker, that the contest was filed prior to probate of the Will, and that Contestant timely challenged the Will prior to admission to probate.

The jury found that the Testatrix, Nobie Florence Parker, deceased, did not have testamentary capacity on February 15, 2006, when she signed the Last Will and Testament dated February 15, 2006, and that Nobie Florence Parker was unduly influenced to sign the February 15, 2006, Last Will and Testament of Nobie Florence Parker.

IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED, that the Last Will and Testament of Nobie Florence Parker, deceased, dated February 15, 2006, is invalid.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Proponent's Application to Probate the Last Will and Testament of Nobie Florence Parker, deceased, the Will dated February 15, 2006, is DENIED.

37

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Contestant recover from Proponent costs of court.

Signed the ___19___ day of ___Sept___, 2014.

_____
JUDGE PRESIDING

38

2

FILED FOR RECORD
at_____o'clock____m

JUL 3 0 2014 🅑

TERESA BOCKMON
District Clerk, Camp County, Texas
By_____Deputy

CAUSE NO. CV-11-1728

IN THE ESTATE OF                    §    IN THE DISTRICT COURT

NOBIE FLORENCE PARKER,              §    CAMP COUNTY, TEXAS

DECEASED

## CHARGE OF COURT

MEMBERS OF THE JURY:

After the closing arguments, you will go to the jury room to decide the case, answer the questions that are attached, and reach a verdict. You may discuss the case with other jurors only when you are all together in the jury room.

Remember my previous instructions: do not discuss this case with anyone else, either in person or by any other means. Do not do any independent investigation about the case or conduct any research. Do not look up any words in dictionaries or on the Internet. Do not post information about the case on the Internet. Do not share any special knowledge or experiences with the other jurors. Do not use your phone or any other electronic device during your deliberations for any reason.

Here are the instructions for your answering the questions.

1. Do not let bias, prejudice, or sympathy play any part in your decision.

2. Base your answers only on the evidence admitted in court and on the law that is in these instructions and questions. Do not consider or discuss any evidence that was not admitted in the courtroom.

3. You are to make up your own minds about the facts. You are the sole judges of the credibility of the witnesses and the weight to give their testimony. But on matters of law, you must follow all of my instructions.

4. If my instructions use a word in a way that is different from its ordinary meaning, use the meaning I give you, which will be a proper legal definition.

5. All the questions and answers are important. No one should say that any question or answer is not important.

6. Answer "yes" or "no" to all questions unless you are told otherwise. A "yes" answer must be based on a preponderance of the evidence.

24

The term "preponderance of the evidence" means the greater weight of credible evidence presented in this case. If you do not find that a preponderance of the evidence supports a "yes" answer, then answer "no". A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted into evidence. For a fact to be proved by a preponderance of the evidence, you must find that the fact is more likely true than not true.

A fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonable inferred from other facts proved.

7. Do not decide who you think should win before you answer the questions and then just answer the questions to match your decision. Answer each question carefully without considering who will win. Do not discuss or consider the effects your answers will have.

8. Do not answer questions by drawing straws are any method of chance.

9. Do not trade your answers. For example, do not say, "I will answer this question your way if you answer another question my way."

10. The answers to the questions must be based on the decision of at least 10 of the 12 jurors. The same 10 jurors must agree on every answer. Do not agree to be bound by a vote of anything less than 10 jurors, even if it would be a majority.

As I have said before, if you do not follow these instructions, you will be guilty of jury misconduct, and I might have to order a new trial and start this process over again. This would waste your time and the parties' money. If a juror breaks any of the rules, tell that person to stop and report it to me immediately.

QUESTION _____/_____

Did Nobie Florence Parker have testamentary capacity to sign the Last Will and Testament dated February 15, 2006?

A decedent has testamentary capacity if, at the time the decedent signs a will, the decedent ---

1.    has sufficient mental ability to understand that she is making a will, and

2.    has sufficient mental ability to understand the effect of her act in making the will, and

3.    has sufficient mental ability to understand the general nature and extent of her property, and

4.    has sufficient mental ability to know her next of kin and natural objects of her bounty and their claims on her, and

5.    has sufficient memory to collect in her mind the elements of the business to be transacted and to be able to hold the elements long enough to perceive their obvious relation to each other and to form a reasonable judgment as to these elements.

Answer "Yes" or "No".

Answer: _____ NO _____

26

QUESTION 2

Does the Last Will and Testament of Nobie Florence Parker dated February 15, 2006, meet the following requirement?

1.  The decedent signed the Last Will and Testament with the intent to dispose of her property after her death.

Answer "Yes" or "No".

Answer: _____YES_____

27

QUESTION  3

Did Nobie Florence Parker sign the Last Will and Testament dated February 15, 2006, as a result of undue influence?

"Undue influence" means that ---

1.    an influence existed and was exerted, and

2.    the influence undermined or overpowered the mind of the decedent at the time she signed the Last Will and Testament, and

3.    the decedent would not have signed the Last Will and Testament but for the influence.

Answer "Yes" or "No".

Answer:    YES

28

Presiding Juror:

1. When you go into the jury room to answer the questions, the first thing you will need to do is choose a presiding juror.

2. The presiding juror has these duties:

    a.   Have the complete charge read aloud if it will be helpful to your deliberations;

    b.   Preside over your deliberations, meaning manage the discussions, and see that you follow these instructions;

    c.   Give written questions or comments to the bailiff who will give them to the judge;

    d.   Write down the answers you agree on;

    e.   Get the signatures for the verdict certificate; and

    f.   Notify the bailiff that you have reached a verdict.

Do you understand the duties of the presiding juror? If you do not, please tell me now.

## Instructions for Signing the Verdict Certificate

1. You may answer the questions on a vote of ten jurors. The same ten jurors must agree on every answer in the charge. This means that you may not have one group of ten jurors agree on one answer and a different group of ten jurors agree on another answer.

2. If ten jurors agree on every answer, those ten jurors sign the verdict.

3. If eleven jurors agree on every answer, those eleven jurors sign the verdict.

4. If all twelve of you agree on every answer, you are unanimous and only the presiding juror signs the verdict.

5. All jurors should deliberate on every question. You may end up with all twelve of you agreeing on some answers, while only ten or eleven of you agree on other answers, but when you sign the verdict, only those ten who agree on every answer will sign the verdict.

Do you understand these instructions? If you do not, please tell me now.

JUDGE PRESIDING

# Verdict Certificate

Check one:

___✓___ Our verdict is unanimous. All twelve of us have agreed to each and every answer. The presiding juror has signed the certificate for all twelve of us.

_____          ___Kauhi D. Adcock___
Signature of Presiding Juror                         Printed Name of Presiding Juror

_____Our verdict is not unanimous. Eleven of us have agreed to each and every answer and have signed the certificate below.

_____Our verdict is not unanimous. Ten of us have agreed to each and every answer and have signed the certificate below.

**Signature**                                    **Print Name**

1. _____          _____

2. _____          _____

3. _____          _____

4. _____          _____

5. _____          _____

6. _____          _____

7. _____          _____

8. _____          _____

9. _____          _____

10. _____          _____

11. _____          _____

FILED FOR RECORD
at 1:46 o'clock p m

JUL 30 2014

TERESA BOCKMON
District Clerk, Camp County, Texas
By_____ Deputy

30

3

9733

FILED FOR RECORD
at 11:30 o'clock A m

SEP _ 7 2011

ELAINE YOUNG
County Clerk, Camp County, Texas
By_____Deputy

# LAST WILL AND TESTAMENT

## OF

## NOBIE FLORENCE PARKER

I, NOBIE FLORENCE PARKER, of the County of Camp and the State of Texas, being in good health, of sound and disposing mind and memory, do make and declare this instrument to be my Last Will and Testament, hereby expressly revoking all former Wills and Codicils made by me at any time heretofore, and intending hereby to dispose of all the property of whatever kind and wherever situated which I own, or in which I have any kind of interest at the time of my death.

## I.
## IDENTITY OF THE FAMILY

At the time of the execution of this Will, I am not married and I have three children, namely, JO ANN (PARKER) NEAL; RICHARD LYNN PARKER and JAMES MIKEL PARKER, deceased. I purposefully do not make any gifts or bequeaths to Jo Ann (Parker) Neal and James Mikel Parker or any of their children in this document.

## II.
## PAYMENT OF EXPENSES

I direct that all the expenses of my last illness, my funeral expenses, and my just personal debts, including any inheritance taxes, transfer taxes, and estate taxes which may be levied by the United States Government or by any state by reason of my death, shall be paid by my Independent Executor out of the residue of my estate as soon as conveniently may be done; provided that my Independent Executor, in such Executor's sole discretion, may distribute from time to time any real or personal property in my estate which at my death is subject to a lien securing an indebtedness upon it without discharging said indebtedness, if in my Independent Executor's judgment, the condition of my estate so requires. The distributee shall then be considered as having received my estate's equity in the property.

## III.
## DISPOSITION OF ESTATE

A.     I give, devise and bequeath all of my estate to my son, RICHARD LYNN PARKER, provided, however, that if Richard Lynn Parker shall not then survive me, but should leave issue then surviving me, such then surviving issue shall take, per stirpes, the share that Richard Lynn Parker would have taken by surviving me.

B.     Any other property of mine that has not been disposed of under any other provision of this Will shall go and be distributed to my heirs-at-law. Their identity and respective shares shall be determined in all respects as if my death had occurred immediately following the happening of the event requiring such distribution, and according to the laws of Texas then in force governing the distribution of the estate of an intestate.

## IV.

N. F. P.

Last Will and Testament of Nobie Florence Parker
c:\wpdocs\probate\parker.101

1

EXHIBIT
P. 1

## DEFINITION OF SURVIVAL

Any legatee, devisee, donee, person or beneficiary with respect to all or any part of my estate who shall not survive until ninety (90) days after the date of my death, or until this Will is probated, whichever occurs earlier, shall be deemed to have predeceased me, and shall be treated for all purposes herein as though such person had predeceased me.

## V.
## APPOINTMENT OF EXECUTOR

A.    I hereby nominate, constitute and appoint my son, RICHARD LYNN PARKER, as Independent Executor of my estate.

B.    If any individual Independent Executor or Executrix becomes unable to discharge his or her duties under this Will because of accident, physical or mental illness or deterioration, or other cause and does not resign, then upon certification in a form sufficient for the recording of a deed in the State of Texas by two medical doctors (neither of whom is a beneficiary under this Will) affirming that each has examined the Independent Executor or Executrix and that each has concluded, based on such examination, that the Independent Executor or Executrix is unable to discharge his or her duties under this Will, the Independent Executor or Executrix shall cease to serve, as if he or she had resigned, effective the date of the certification.

C.    It is my will and desire and I hereby direct that in the administration of my estate, my Independent Executor or any successor shall not be required to furnish any bond of any kind and that no action shall be had in any court in the administration of my estate other than the probating of this, my Last Will and Testament, and the filing of any Inventory, Appraisement and List of Claims of my estate that may be required.

## VI.
## POWERS OF EXECUTOR

The estate created or arising by virtue of my death and this instrument, my Last Will and Testament, shall be governed by and administered in accordance with the following provisions:

A.    I hereby grant unto my Independent Executor or any successor named above, full power and authority over any and all of my estate and they are hereby authorized to sell, manage, and dispose of the same or any part thereof, and in connection with any such sale or transaction, make, execute and deliver proper deeds, assignments and other written instruments and to do any and all things proper or necessary in the orderly handling and management of my estate.

B.    My Independent Executor or any successor named above, shall have full power and authority to compromise, settle and adjust any and all debts, claims and taxes which may be due from or owing by my estate.

C.    My Independent Executor or any successor named above, shall have full power and authority to deal with any person, firm, or corporation.

D.    My Independent Executor or any successor named above, shall have full power to borrow money at any time and in any amount from time to time for the benefit of my estate, from

N. F. P.

Last Will and Testament of Nobie Florence Parker
c:\wpdocs\probate\parker.101

2

any person, firm, or corporation or from any bank or trust company and to secure the loan or loans by pledge, deed of trust, mortgage or other encumbrances on the assets of the estate and from time to time to renew such loans and give additional security.

      E.     The Independent Executor shall serve without compensation.

## VII.
## SPENDTHRIFT PROVISION

No interest of any beneficiary in the corpus or income of my estate shall be subject to assignment, alienation, pledge, attachment, or claims of creditors of such beneficiary and may not otherwise be alienated or encumbered by such beneficiary, except as may be otherwise expressly provided herein.

## VIII.
## IN TERROREM CLAUSE

If any beneficiary under this Will shall in any manner contest or attack this Will or any of its provisions, any share or interest in my estate given to such contesting beneficiary under this Will is hereby revoked and shall be disposed of as part of the residue of my estate.

## IX.
## DEFINITIONS AND INTERPRETATIONS

For purposes of interpretation of this, my Last Will and Testament, and the administration of the estate established herein, the following provisions shall apply:

      A.     The words "child, children, descendants, issue," and similar terms shall be deemed only to include children born to, or adopted (on or before eighteen years of age) by me or my descendants.

      B.     When a distribution is directed to be made to any person's descendants "per stirpes," the division into stirpes shall begin at the generation nearest to such person that has a living member.

      C.     The use of the masculine, feminine or neuter genders shall be interpreted to include the other genders, and the use of either the singular or the plural number shall be interpreted to include the other number, unless such an interpretation in a particular case is inconsistent with the general tenor of this instrument. Any references herein relating to my Independent Executor shall include his successors regardless of the gender of the successors.

      D.     This Will shall be probated in accordance with the laws of Texas, and should any provisions of the same be held unenforceable or invalid for any reason, the unenforceability or invalidity of said provision shall not affect the enforceability or validity of any other part of this Will.

**IN WITNESS WHEREOF**, I, NOBIE FLORENCE PARKER, hereby sign my name to this, my last Will, on each page of which I have placed my initials, on this __15th__ day of __February__, 2006, at Pittsburg, Texas.

_N. F. P._

Last Will and Testament of Nobie Florence Parker
c:\wpdocs\probate\parker.101

3

_____
NOBIE FLORENCE PARKER, Testatrix

## ATTESTATION

The foregoing instrument was signed in our presence by NOBIE FLORENCE PARKER and declared by her to be her last Will. We, at the request and in the presence of NOBIE FLORENCE PARKER and in the presence of each other, have subscribed our names below as witnesses on this _15th_ day of __February__, 2006.

Witness _MICHAEL COATES_
_177 CR 2154_

Street Address _____
_WHITMAN, TX_

City and State

Witness _ARLENE COOK_
_6403 HWY 11 West_

Street Address
_Pittsburg_

City and State

## SELF-PROVING AFFIDAVIT

| STATE OF TEXAS | § |
| | § |
| COUNTY OF CAMP | § |

**BEFORE ME,** the undersigned authority, on this day personally appeared NOBIE FLORENCE PARKER, _MICHAEL COATES_ and _ARLENE COOK_, known to me to be the Testatrix and the witnesses, respectively, whose names are subscribed to the annexed or foregoing instrument in their respective capacities, and all of said persons being by me duly sworn, the said NOBIE FLORENCE PARKER, Testatrix, declared to me and to the said witnesses in my presence that said instrument is her Last Will and Testament and that she had willingly made and executed it as her free act and deed; and the said witnesses, each on their oath stated to me, in the presence and hearing of the said Testatrix, that the said Testatrix had declared to them that said instrument is her Last Will and Testament, and that she executed same as such and wanted each of them to sign it as a witness; and upon their oaths each witness stated further that they did sign the same as witnesses in the presence of the said Testatrix and at her request; that said Testatrix was at that time eighteen years of age or over (or being under such age, was or had been lawfully married, or was then a member of the armed forces of the United States or of an auxiliary thereof or of the Maritime Service) and was of sound mind; and that each of said witnesses was then

4

at least fourteen years of age.

_____

NOBIE FLORENCE PARKER, Testatrix

_____

Witness

_____

Witness

**SUBSCRIBED AND SWORN TO BEFORE ME** by the said NOBIE FLORENCE PARKER, Testatrix, and by the said *Michael Coates* and *Arlene Cook*, Witnesses, this __15th__ day of __February__, A.D. 2006.

_____

Notary Public, State of Texas

PREPARED IN THE OFFICE OF:

Law Offices of James W. Wallace
216 Lafayette Park
Pittsburg, Texas 75686

_____

N. F. P.

Last Will and Testament of Nobie Florence Parker
c:\wpdocs\probate\parker.101

5